# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN SLAUGHTER

v.

NATIONAL RAILROAD PASSENGER
CORPORATION a/k/a AMTRAK

CIVIL ACTION

NO.: 10-4203

## ORDER

On this _____ day of _____, 2011, it is hereby ORDERED

AND DECREED that National Railroad Passenger Corporation a/k/a Amtrak's

Motion for Protective Order is GRANTED.

The following is FURTHER ORDERED:

1.      Amtrak is not required to produce an un-redacted copy of the "Accident

Investigation Report" in this matter.

2.      Amtrak's objection to production of the redacted information in the

"Accident Investigation Report" is sustained.

BY THE COURT:

_____
                                                                              J.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN SLAUGHTER

v.

NATIONAL RAILROAD PASSENGER
CORPORATION a/k/a AMTRAK

CIVIL ACTION

NO.: 10-4203

## NATIONAL RAILROAD PASSENGER CORPORATION'S
## MOTION FOR PROTECTIVE ORDER

National Railroad Passenger Corporation a/k/a Amtrak (hereinafter "Amtrak")

herein files this Motion for Protective Order and in support thereof, avers as follows:

1.     On March 24, 2009, Plaintiff was employed by Amtrak, and was working at the

Race Street Engine Terminal, 30th Street Station, Philadelphia, PA and as part of his

job duties he was required to throw a railroad switch.

2.     Plaintiff alleges that the switch was defective and failed to properly operate.

He alleges that the switch "hung up" and sprung up, forcefully pushing plaintiff's right

foot, knee and hip.

3.     Plaintiff claims he sustained a right knee interstitial tear at the proximal

tendon, patellofemoral chondrosis and patellofemoral synovitis.

4.     Plaintiff brought this lawsuit against Amtrak under the Federal Employers

Liability Act ("FELA"), 45 U.S.C. § 51 et seq., to recover damages for injuries

allegedly sustained while employed by Amtrak.

5.     On the day following Plaintiff's accident, March 25, 2009, Amtrak undertook an investigation into this accident to ensure the operations, facility and employees were safe and to make subjective recommendations and suggestions to improve and ensure the safety of operations, facilities and employees.

6.     This investigation resulted in an "Accident Investigation Report" which is attached as Exhibit A, in its redacted format.

7.     Defendant's produced a copy of said Report with redactions in its self executing disclosures on October 7, 2010.

8.     The Redactions included redacting employees' phone numbers and opinions, suggestions, recommendations and critical self analysis which are listed under **"CONCLUSIONS"**on the form.   Specifically redacted were the notations under, "Conclusions and Recommended Remedial/Corrective Actions" and "Comments and/or Projected Date of Implementation."  See Exhibit A.

9.     On January 6, 2011, a few days before Plaintiff's scheduled Deposition, Plaintiff's counsel faxed the attached correspondence indicating he refused to produce the Plaintiff for deposition at or until an un-redacted copy of the Accident Investigation Report was produced.  Exhibit B.

10.     On January 20, 2011, Plaintiff's counsel followed up indicating he would not reschedule Plaintiff's deposition until this Report was received.  Exhibit C.  Note: A separate Motion is pending due to the improper cancellation of Plaintiff's deposition

for the third time by Plaintiff's counsel.

11.     Plaintiff's counsel attached case law to his January 6, 2011 letter which Plaintiff's counsel represents stands for the proposition courts have declined to recognize the Doctrine of Self-Critical Analysis, which is the basis for the redactions on the Investigative Report in this case, other than the redaction of employees phone numbers which were done to protect their privacy.

12.     It is Defendant's position that the Craig opinion to which Plaintiff's counsel refers is from the Middle District and is, therefore, not binding on courts in the Eastern District.

13.     Second, Craig is not an FELA case, and the Eastern District has held that the self-critical analysis doctrine applies to certain information in accident investigation reports in FELA cases.  In Melhorn v. New Jersey Transit, 2001 WL516108 (E.D.Pa.), the Eastern District had the opportunity to hold, but did not hold, that the doctrine was wholly inapplicable in FELA cases.  On the contrary, the court analyzed, *under the elements of the doctrine*, whether the specific information which was redacted was covered by the doctrine, and determined that such information was not protected because it was objective, rather than subjective opinion/evaluation.  Moreover, the report in question in Melhorn was not identified as a "mandatory government report."  Melhorn does not limit the doctrine's applicability to such reports in FELA cases, as Plaintiff's counsel suggests in his letter.

14.     More recently, in 2007,in <u>Zoom Imaging, L.P. v. St. Luke's Hosp. and Health Network</u>, 513 F.Supp.2d 411 (E.D.Pa. 2007), the Eastern District, citing <u>Melhorn</u> and other cases, recognized that it has in fact recognized and applied the doctrine under circumstances which are applicable to the Slaughter case:  "[A] number of federal court decisions have recognized some form of the self-critical analysis privilege, *the decisions in this Court recognizing the privilege have done so primarily in cases involving **accident investigations**, affirmative action plans, and internal police investigations.*"

15.     In the instant case, the redacted language in question is subjective evaluation which provides recommended actions which should be taken by Amtrak in order to prevent similar accidents in the future. This language epitomizes the exact type of information which is most clearly protected by the doctrine.

16.     The above position of Amtrak was briefly summarized in a correspondence to Plaintiff's counsel that is attached hereto as Exhibit D and faxed to Plaintiff's counsel on February 1, 2011.

17.     Amtrak's objections to production and the redactions to the Report should be sustained, and Plaintiffs should be precluded from requesting or obtaining such information from Amtrak.

WHEREFORE, Amtrak requests that this Court grant the instant Motion for Protective Order and confirm Amtrak's position that it is not required to produce the

4

redacted portions of the Investigation Report that contain subjective evaluation and

recommendations for further actions by Amtrak to improve - all such information that

falls under the Self-Critical Analysis Privilege.


                              GALLAGHER & ROWAN. P.C.

                                   *JEGL2565*
                      BY:_____
                              PAUL F.X. GALLAGHER, ESQ.
                              JESSICA LIPPY, ESQ.
                              Attorney for Defendant,
                              National   Railroad   Passenger   Corporation,
                              a/k/a Amtrak
                              1800 JFK Boulevard, Suite 1000
                              Philadelphia, PA 19103
                              215-732-8900
                              Attorney ID 16225, 84736
DATE:          February 1, 2011

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN SLAUGHTER | CIVIL ACTION |
| v. | |
| NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK | NO.: 10-4203 |

## NATIONAL RAILROAD PASSENGER CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

### I.    FACTS

On March 24, 2009, Plaintiff was employed by Amtrak, and was working at the Race Street Engine Terminal, 30th Street Station, Philadelphia, PA and as part of his job duties he was required to throw a railroad switch. Plaintiff alleges that the switch was defective and failed to properly operate. He alleges that the switch "hung up" and sprung up, forcefully pushing plaintiff's right foot, knee and hip. Plaintiff claims he sustained a right knee interstitial tear at the proximal tendon, patellofemoral chondrosis and patellofemoral synovitis. Plaintiff brought this lawsuit against Amtrak under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 et seq., to recover damages for injuries allegedly sustained while employed by Amtrak.

On the day following Plaintiff's accident, March 25, 2009, Amtrak undertook an investigation into this accident to ensure the operations, facility and employees were safe and to make subjective recommendations and suggestions to improve and

6

ensure the safety of operations, facilities and employees.  This investigation resulted in an "Accident Investigation Report" which is attached as Exhibit A, in its redacted format.   Defendant's produced a copy of said Report with redactions in its self executing disclosures on October 7, 2010.   The Redactions included redacting employees' phone numbers and opinions, suggestions, recommendations and critical self analysis which are listed under  **"CONCLUSIONS"**on the form. Specifically redacted were the notations under, "Conclusions and Recommended Remedial/Corrective Actions" and "Comments and/or Projected Date of Implementation."  See Exhibit A.

On January 6, 2011, a few days before Plaintiff's scheduled Deposition, Plaintiff's counsel faxed the attached correspondence indicating he refused to produce the Plaintiff for deposition at or until an un-redacted copy of the Accident Investigation Report was produced.  Exhibit B.  On January 20, 2011, Plaintiff's counsel followed up indicating he would not reschedule Plaintiff's deposition until this Report was received.  Exhibit C.  Note: A separate Motion is pending due to the improper cancellation of Plaintiff's deposition for the third time.

## II.    ARGUMENT

In support of his argument that the redacted information in the Amtrak Accident Investigation Report ("Report") is not protected from discovery via the critical self-analysis doctrine, Plaintiff referred Defense counsel to the **Craig v. Rite**

2

**Aid**, 2010 U.S. Dist. LEXIS 137773 (US District Court of the Middle District of PA) case which declines to recognize the Doctrine of Self-Critical Analysis, which is the basis for the redactions on the Investigative Report in this case, other than the redaction of employees phone numbers which were done to protect their privacy. It is Defendant's position that the <u>Craig</u> opinion to which Plaintiff's counsel refers is from the Middle District and is, therefore, not binding on courts in the Eastern District.  The above position of Amtrak along with additional reasoning was briefly summarized in a correspondence to Plaintiff's counsel that is attached hereto as Exhibit D and faxed to Plaintiff's counsel on February 1, 2011.

Second, <u>Craig</u> is not an FELA case, and the Eastern District has held that the self-critical analysis doctrine applies to certain information in accident investigation reports in FELA cases.  In <u>Melhorn v. New Jersey Transit</u>, 2001 WL516108 (E.D.Pa.), the Eastern District had the opportunity to hold, <u>but did not hold</u>, that the doctrine was wholly inapplicable in FELA cases.  On the contrary, the court analyzed, *under the elements of the doctrine*, whether the specific information which was redacted was covered by the doctrine, and determined that such information was not protected because it was objective, rather than subjective opinion/evaluation.  Moreover, the report in question in <u>Melhorn</u> was not identified as a "mandatory government report."  <u>Melhorn</u> does not limit the doctrine's applicability to such reports in FELA cases, as suggested in the case provided by Plaintiff's counsel.

Further, more recently, in 2007, in <u>Zoom Imaging, L.P. v. St. Luke's Hosp. and Health Network</u>, 513 F.Supp.2d 411 (E.D.Pa. 2007), the Eastern District, citing <u>Melhorn</u> and other cases, recognized that it has in fact recognized and applied the doctrine under circumstances which are applicable to the Slaughter case:   "[A] number of federal court decisions have recognized some form of the self-critical analysis privilege, *the decisions in this Court recognizing the privilege have done so primarily in cases involving **accident investigations***, affirmative action plans, and internal police investigations."

In the instant case, the redacted language in question is subjective evaluation which provides recommended actions which should be taken by Amtrak in order to prevent similar accidents in the future. This language epitomizes the exact type of information which is most clearly protected by the doctrine.

The court in the <u>Craig</u> case cited by Plaintiff cites a commentator explaining the doctrine as follows: "The self-critical analysis qualified privilege allows individuals or businesses to candidly evaluate their compliance with regulatory and legal requirements without creating evidence that may be used against them in future litigation.   The rationale for this qualified privilege is that critical self-evaluation fosters the compelling public interest that individual and businesses comply with the law." <u>Craig</u>, supra, citations omitted.   Here that is exactly what is redacted on the report, information that was candidly prepared the day following the accident to evaluate and make recommendations and suggestions to provide for a safer, better

4

railroad in the future and as such should not now be used against Amtrak, otherwise it could serve to put a stop to candid self analysis, potentially causing a detrimental effect on the public interest for safety.

Amtrak's objections and redactions to production of an un-redacted Report should be sustained, and Plaintiffs should be precluded from requesting or obtaining such information from Amtrak and Amtrak's Motion for Protective Order should be granted.

It is anticipated based upon past experience with Plaintiff's FELA counsel in this area that Plaintiff will also cite the 20 year-old case of Granger v. National Railroad Passenger Corporation, 116 F.R.D. 507 (E.D.Pa. 1987) in support of his position.  While Granger is undeniably factually applicable, in that the Granger court was faced with the same issue which is the subject matter of the instant motion, i.e., does the critical self-analysis doctrine protect from discovery certain information contained in an Amtrak Accident Investigation Report, Granger is no longer good law.

*Fourteen (14) years after* Granger was decided, and as discussed above the Eastern District was again confronted with the issue of the applicability of the critical self-analysis doctrine to information contained in a railroad internal accident report. In Melhorn v. New Jersey Transit Rail Operations, Inc., 2001 WL 516108 (E.D. Pa.), the court applied a three-part test to determine whether information contained in a railroad internal accident report was protected by the doctrine.  Under such test,

information which meets the following criteria is deemed to be protected by the

doctrine:

> 1) The information must have been prepared for mandatory government records *or for a critical self analysis* and undertaken by the party seeking protection;

> 2) The privilege extends only to subjective, evaluative materials, but not to objective data in reports; and

> 3) The policy favoring exclusion must clearly outweigh plaintiff's need for the documents.

Melhorn at *1 citing Clark v. Pennsylvania Power & Light Co., 1999 WL 225888, *2

(E.D. Pa.).  The court in Granger did not apply such test.  Instead, they held that all

information contained in the "cause" and "contributing factors" sections was

categorically discoverable and not protected by the doctrine, *regardless of whether*

*such information was subjective/evaluative or objective.*   Granger has been

superceded by Melhorn.

The policy which favors non-disclosure of information protected by the

doctrine is grounded on the premise that disclosure of documents containing candid

self-evaluative information will deter businesses, industry and government from

conducting socially beneficial investigations relating to compliance with the law and

professional standards and determining what actions should be taken in the future

to prevent similar accidents.  Joe v. Prison Health Services, Inc., 782 A.2d 24, 34

(Pa. Cmwlth. 2001).  A railroad conducting investigations into the causes of railroad

related accidents and <u>then creating a plan of action aimed at preventing similar accidents in the future</u> are the exact type of socially beneficial investigations for which the doctrine was created.   The American public has an interest in the institution of practices assuring safer railroad operations.   Where a party's fear of potential disclosure of negative findings will inhibit honest critical assessments, disclosure is disfavored. <u>Drayton v. Pilgrim's Pride</u>, 2005 WL 2094903 (E.D. Pa. August 30, 2005).

In the instant case, the redacted language is not objective data/findings, i.e., for example, "the switch inspection which found the switch to be in proper working order" which is contained in the "Findings" section of this same report.  By contrast, the redacted language was clearly the product of Amtrak analyzing how the accident happened and then determining <u>how Amtrak can take action to prevent similar accidents in the future</u>.  The critical-self analysis doctrine was created to protect this exact type of  information from discovery.

## II.    RELIEF REQUESTED

In consideration of the foregoing, Amtrak herein requests its Motion for Protective Order be Granted and that it not be required to provide certain redacted portions of Amtrak Investigation Report that fall within the protection of the self-critical analysis privilege.

GALLAGHER & ROWAN. P.C.

*JEGL2565*

BY:_____

PAUL F.X. GALLAGHER, ESQ.
JESSICA LIPPY, ESQ.
Attorney for Defendant,
National Railroad Passenger Corporation,
a/k/a Amtrak
1800 JFK Boulevard, Suite 1000
Philadelphia, PA 19103
215-732-8900
Attorney ID 16225, 84736

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN SLAUGHTER

v.

NATIONAL RAILROAD PASSENGER
CORPORATION a/k/a AMTRAK

CIVIL ACTION

NO.: 10-4203

## LOCAL RULE 26.1(f) CERTIFICATE

I, JESSICA E. LIPPY, Esquire, as attorney for NATIONAL RAILROAD

PASSENGER CORPORATION, in the above captioned matter, herein certify that

the parties, after reasonable effort, are unable to resolve the dispute which is the

subject matter of this Motion to Compel.

GALLAGHER & ROWAN, P.C.

By: _____**JEGL2565**_____
JESSICA E. LIPPY, ESQ.
Attorney for Defendants,
National Railroad Passenger
Corporation

Date: February 1, 2011

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| KEVIN SLAUGHTER | CIVIL ACTION |
|---|---|
| v. | |
| NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK | NO.: 10-4203 |

**ATTORNEY CERTIFICATION OF GOOD FAITH**

The undersigned counsel for movant hereby certifies and attests that:

☒  a.    He/She has had the contacts described below with opposing counsel regarding the discovery matter contained in the attached discovery motion in an effort to resolve the specific discovery disputes at issue and, further, that despite all counsel's good faith attempts to resolve the disputes, counsel have been unable to do so.

*Description:* Counsel for Plaintiff prevented the deposition of Plaintiff from being taken and demanded an un-redacted copy of Accident Investigation Committee Report on two occasions.  Defendant, National Railroad Passenger Corporation advised why they would not be producing same as portions were protected by the Self-Critical Analysis Doctrine but no agreement will be possible without court intervention.

   b.    He or she has made good faith but unsuccessful efforts described below to contact opposing counsel or unrepresented party in an effort to resolve the discovery dispute.

CERTIFIED TO THE COURT BY:

_____**JEGL2565**_____
JESSICA E. LIPPY, ESQUIRE

Date: February 1, 2011

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN SLAUGHTER | CIVIL ACTION |
| v. | |
| NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK | NO.: 10-4203 |

## CERTIFICATE OF SERVICE

I, Jessica E. Lippy, Esq., hereby certify that a true and correct copy of Defendant Amtrak's Motion for Protective Order was served via first class mail, on February 1, 2011, postage prepaid, to counsel for all parties as follows:

Robert E. Myers, Esquire
Coffey Kaye Myers & Olley
718 Two Bala Plaza
Bala Cynwyd, PA 19004

GALLAGHER & ROWAN. P.C.

*JEGL2565*

BY:_____
PAUL F.X. GALLAGHER, ESQ.
JESSICA LIPPY, ESQ.
Attorney for Defendant,
National Railroad Passenger Corporation,
a/k/a Amtrak
1800 JFK Boulevard, Suite 1000
Philadelphia, PA 19103
215-732-8900
Attorney ID 16225, 84736

12

**AMTRAK®**                                    **Accident Investigation Report**

## Facts   *use additional forms if necessary*

| 1. Name of Injured | 2. Date of Report | 3. Employee ID | 4. No. of Previous Injuries | Incident Number: |
|---|---|---|---|---|
| **Kevin Slaughter** | **3 / 25 /2009** | **52965** | **0** | **111438** |

## Location of Occurrence   *identify below*

| 5. Date of Occurrence **3 / 24 /2009** | 6. Time of Occurrence **9 : 30**  ☐ AM ☒ PM |
|---|---|

| 7. Division | 8. Department | 9. Facility/Shop |
|---|---|---|
| **Mid Atlantic Division** | **Mechanical** | **Race Street Engine House** |

| 10. Street Address **30th and Race Streets** | | |
|---|---|---|
| 11. City **Philadelphia** | 12. State **PA** | 13. Zip **19104** |

14. Specific Location of Incident, Operation or Job (Bldg. No., Room No., Mile Post, etc.)
**Race Street Engine House Territory. North end switch #1.**

15. Description of Work Performed
**Employee throwing switch arm, he then stepped on the switch arm with his right foot. While he pressed down on his right foot the switch arm sprung upward, causing his right foot and leg to spring upward also.**

## Conditions

16. Physical Conditions at Time of Occurrence   *describe below*
**Unknown. Injury was not reported until the next day. March 25, 2009 at 2:45PM.**

## Findings

17. Factual Findings of Investigation   *describe below*
**The committee found that after all facts were brought to light, and the switch inspection which found the switch to be in proper working order, The findings that caused this injury was the improper use of the switch when the employee used his foot to attempt to secure the switch into the keeper.**

## Eyewitnesses

18. Eyewitnesses   *list below -- use additional forms if necessary*

| Name | Telephone No. | Name | Telephone No. |
|---|---|---|---|
| **John LLoyd** | ~~———~~ | | |
| | | | |
| | | | |

## Investigation Team

19. Investigation Team   *list below*

| Member Name | Title | Telephone No. | Signature | Date |
|---|---|---|---|---|
| **William J Zajac** | **General Foreman** | ███ | *William Zaj* | 3/31/09 |
| **Mike Fell** | **Asst. Superintendent** | ███ | *Mike Fell* | 3/31/09 |
| **William Friel** | **Electrician** | ███ | *William Friel* | 3-31-09 |

Amtrak is a registered service mark of the National Railroad Passe

NRPC 405 (07/07)  word template



**EXHIBIT**

_A_

0030

Incident Number:
**111438**

**Inspection of Tools/Equipment**   *describe below*

| 20. Was an inspection performed? ☒ Yes ☐ No | 21. Date and Time Performed  3 / 26 /2009 | 12 : 36  ☒ AM ☐ PM |
|---|---|---|

22. Findings of Inspection
**Track Foreman A.V.Pirelli found no malfunctions and no exceptions to the operation on #1 switch north.**

| 23. Inspector's Name  A.V.Pirelli | 24. Title  Track Foreman | | 25. Telephone No.  215-349-2370 |
|---|---|---|---|
| 26. Signature | | 27. Date  3/31/09 | 28. Date of most recent prior inspection  / / |

29. **Photo or Drawing of Incident Scene**
*Because this is a locked Amtrak form, it is not possible to allow users to insert electronic pictures into this form.  If you have an electronic file to include with this form, please create your own file to accompany this form.  When naming your electronic file, include the incident number in the name of the picture file.*

30. Was root cause analysis conducted?  ☐ Yes  ☒ No

**Conclusions**   *describe below*

31. Conclusions and Recommended Remedial/Corrective Actions

32. Comments and/or Projected Date of Implementation

**Review**

33. Incident Review – To be Signed by Supervision and Department Head or Equivalent   *list below*

| Name | Title | Telephone No. | Signature | Date |
|---|---|---|---|---|
| **Mike Fell** | **Asst. Superintendent** | | Mike Fell | 3/31/09 |
| **William J Zajac** | **General Foreman** | | Will J. 3f | 3/31/09. |
| | | | | |
| | | | | |

NRPC 405 (07/07)  word template

0031

## COFFEY KAYE MYERS & OLLEY

ATTORNEYS AT LAW

SUITE 718

TWO BALA PLAZA

BALA CYNWYD, PA. 19004-1514

MITCHELL A. KAYE
LAWRENCE A. KATZ
ROBERT E. MYERS
MICHAEL J. OLLEY

JOSEPH A. COFFEY, JR.
OF COUNSEL

PHILADELPHIA AREA
610-668-9800
▽

CABLE ADDRESS:
PBLA
FAX
610-667-3352
NATIONWIDE
800-334-2500

January 6, 2011

Paul F. X. Gallagher, Esquire
Gallagher & Rowan
1800 JFK Boulevard, Suite 1000
Philadelphia, PA  19103

*Via Fax: (215) 732-8999*
*And U.S. First Class Mail*

> Re:    Kevin Slaughter vs. Amtrak
>        USDC for the Eastern District of Pennsylvania, C.A. No.: 10-4203
>        Date of Accident: March 24, 2009

Dear Mr. Gallagher:

Enclosed please find the Opinion of United States Magistrate Judge Jones along with United States Magistrate Judge Martin C. Carlson in the Middle District of Pennsylvania regarding the self-critical analysis. As you can see, when reviewing this decision, the Judge has memorialized the fact that this doctrine has been declined in most jurisdictions and Judge Carlson has declined to follow this doctrine in our Circuit. Therefore, kindly forward to me immediately an un-redacted copy of the accident investigation report in Mr. Slaughter's case. I note that you completely redacted sections 31 and 32 along with telephone numbers which of course should not have been redacted in the first place. I note that you have scheduled Mr. Slaughter's deposition for next week and I will specifically need an un-redacted copy of this report by Monday, January 10, 2011 to properly prepare for this deposition. If you will not produce an un-redacted copy of this report, kindly contact me immediately so that we can contact the United States Magistrate Judge assigned to this case or United States District Court Judge Darnell C. Jones and discuss this issue immediately

In addition, it is my understanding that Ms. Maine of your client's claim department had spoken with Mr. Slaughter on the phone and took some type of statement from him. Kindly inform me first of all whether this conversation was recorded or whether Ms. Maine took a written statement from Mr. Slaughter. In any case, I would like a copy of any and all statements that Mr. Slaughter gave to any employee of your client from the date of the accident up to the present. If you have any

> **EXHIBIT**
>
> *B*

Case 2:10-cv-04203-CDJ   Document 17   Filed 02/01/11   Page 21 of 33

## COFFEY KAYE MYERS & OLLEY

questions, please contact me immediately so that we can resolve these issues so that the depositions will not be cancelled in this case.

In addition, let me take this opportunity to extend to you and the members of your firm the best wishes for a healthy and happy new year.

Very truly yours,

COFFEY, KAYE, MYERS & OLLEY

ROBERT E. MYERS

REM:am
Enclosure



LexisNexis®

1 of 1 DOCUMENT

**SHIRLEY CRAIG, et al., Plaintiffs v. RITE AID CORPORATION and ECKERD CORPORATION d/b/a RITE AID, Defendants**

Civil Action No. 4:08-CV-2317

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

2010 U.S. Dist. LEXIS 137773

December 29, 2010, Decided
December 29, 2010, Filed

**PRIOR HISTORY:** Craig v. Rite Aid Corp., 2010 U.S. Dist. LEXIS 20648 (M.D. Pa., Feb. 4, 2010)

**COUNSEL:** [*1] For Shirley Craig, Individually and on behalf of all other persons similarly situated, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Bradley Berger, LEAD ATTORNEY, Berger & Associates, New York, NY; Eric L. Young, LEAD ATTORNEY, Kenney Lennon & Egan, Plymouth Meeting, PA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Klafter Olsen & Lesser LLP, Rye Brook, NY; Gary E. Mason, LEAD ATTORNEY, The Mason Law Firm, Washington, DC; Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leebron, LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, Mason LLP, Washington, DC; Peter D. Winebrake, R. Andrew Santillo, LEAD ATTORNEYS, Mark J. Gottesfeld, The Winebrake Law Firm, LLC, Dresher, PA; Katherine A. Stone, Robert E. DeRose, Barkan

Neff Handelman Meizlish, LLP, Columbus, OH.

For Justin Torres, Deshawn Powell, Lisa Laun, Eric Rosen, Deanna Johnson, James Fisher, Robert Vasvari, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Eric L. Young, LEAD ATTORNEY, Kenney Lemon & Egan, Plymouth Meeting, PA; Gary E. Mason, LEAD ATTORNEY, The Mason Law Firm, Washington, DC; Jeffrey A. Klafter, [*2] Seth R Lesser, LEAD ATTORNEYS, Fran L. Rudich, Klafter Olsen & Lesser LLP, Rye Brook, NY; Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leebron, LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, Mason LLP, Washington, DC; Peter D. Winebrake, R. Andrew Santillo, LEAD ATTORNEYS, The Winebrake Law Firm, LLC, Dresher, PA.

For Michael B. Veri, John M. Kuhl, Sr., Sirena A. Gray Tagoe, Marie Ali Boone, David Blackwood, Jason Lawrence Falcione, Andrius

2010 U.S. Dist. LEXIS 137773, *

Mateikis, Margaret Pierce, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Eric L. Young, LEAD ATTORNEY, Kenney Lennon & Egan, Plymouth Meeting, PA; Fran L. Rudich, Jeffrey A. Klafter, LEAD ATTORNEYS, Klafter Olsen & Lesser LLP, Rye Brook, NY; Gary E. Mason, LEAD ATTORNEY, The Mason Law Firm, Washington, DC; Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leeborn, LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, Mason LLP, Washington, DC; Peter D. Winebrake, LEAD ATTORNEY, The Winebrake Law Firm, LLC, Dresher, PA.

For Cynthia K. Huff, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Bradley Berger, LEAD ATTORNEY, Berger & Associates, [*3] New York, NY; Eric L. Young, LEAD ATTORNEY, Kenney Lennon & Egan, Plymouth Meeting, PA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Klafter Olsen & Lesser LLP, Rye Brook, NY; Gary E. Mason, LEAD ATTORNEY, The Mason Law Firm, Washington, DC; Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leeborn, LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, ason LLP, Washington, DC; Peter D. Winebrake, R. Andrew Santillo, LEAD ATTORNEYS, The Winebrake Law Firm, LLC, Dresher, PA.

For Morgan Robert Jackson, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Brian McCafferty, LEAD ATTORNEY, Provost Umphrey, L.L.P., Philadelphia, PA; Eric L. Young, LEAD ATTORNEY, Kenney Lennon & Egan, Plymouth Meeting, PA; Fran L. Rudich, Jeffrey A. Klafter, LEAD ATTORNEYS, Seth R Lesser, Klafter Olsen & Lesser LLP, Rye Brook, NY; Gary E. Mason, LEAD ATTORNEY, The Mason Law Firm, Washington, DC;

Michael A. Josephson, LEAD ATTORNEY, Fibich, Hampton & Leeborn, LLP, Houston, TX; Nicholas A. Migliaccio, LEAD ATTORNEY, Mason LLP, Washington, DC; Peter D. Winebrake, LEAD ATTORNEY, The Winebrake Law Firm, LLC, Dresher, PA.

For Jeremy W. Siders, [*4] Mari Lynn Tiplady, William Martinelli, Vicki K. Lynch, Magdalen Fitch, Jennifer Paige-Hill, Sandra Zirkel, William M. Moyes, Philip W. Cunningham, Mark A. Turner, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Eric L. Young, LEAD ATTORNEY, Kenney Lennon & Egan, Plymouth Meeting, PA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Klafter Olsen & Lesser LLP, Rye Brook, NY; Gary E. Mason, LEAD ATTORNEY, The Mason Law Firm, Washington, DC; Nicholas A. Migliaccio, LEAD ATTORNEY, Mason LLP, Washington, DC; Peter D. Winebrake, LEAD ATTORNEY, The Winebrake Law Firm, LLC, Dresher, PA.

For Marie Laskow, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Klafter Olsen & Lesser LLP, Rye Brook, NY; Gary E. Mason, LEAD ATTORNEY, The Mason Law Firm, Washington, DC; Nicholas A. Migliaccio, LEAD ATTORNEY, Mason LLP, Washington, DC; Peter D. Winebrake, LEAD ATTORNEY, The Winebrake Law Firm, LLC, Dresher, PA.

For Nakoff T. Mihail, David B. Kelly, Eyrone Moton, Pamela J. Halbrook, Mark Douglas, Cheryl A. Akins, Carolyn J. Casey, Daniel [*5] A. Gasiewicz, Shelly Kelsey, Mufutau Ibrahim, Candice Peacock, Ronnie D. Cloyd, William O. James Jr., Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD AT-

TORNEYS, Klafter Olsen & Lesser LLP, Rye Brook, NY.

For Kenneth R. Williams, Christopher S. Seitz, Ashley Wiloughby, Ryan Shoemaker, Cynthia Staynoff, Debra Welsh, Joseph F. Savi, Edna Shelley, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Fran L. Rudich, Jeffrey A. Klafter, Seth R Lesser, LEAD ATTORNEYS, Klafter Olsen & Lesser LLP, Rye Brook, NY; Nicholas A. Migliaccio, LEAD ATTORNEY, Mason LLP, Washington, DC.

For Julian Busbee, Robert L. Biafora, Diane M. Bishop, Glenore H. Bess, Clementine Dease, Maxine Greene, Edward Kirk, Stephen P. Mattner, Darrell T. Plant, Cathy Long, John P. Millier, Rebecca R. Jones, Shari Albritten, Carolyn L. Conner, Crystal Huseby, Clara Cory, Mary Lee DeVitis, Margaret J. Pierce, Phyllis F. Marnor, Andrew Raulgnaitis, Paul H. Finger, Dolores Boggs, Theresa Bambino, Cheryl Hajdo, Sheila L. Beasinger, Erik Jenkins, John Keyser, Leatrice Davis, Kenneth E. Keller, [*6] Bryant K. Greaux, Katie M. Davis, Carey Krause, Heather Glenn, Kimberly A. Jones, Geraldine McKown, Menard T. Johnson, Mia C. Johnson, Brandi Lynn Donovan, Meagan Nicole Archer, Connie Howard, William D. Papay, Lawrence J. Keeley, Daniel Fegnil, Barbara A. Fox, Annie Powell, Gina R. Henderson, Carol Purcell, Lewanda J. Gandee, David Homan, Melissa A. Hewitt, Daniel H. Lossia, Kevin Hilton, Sandra J. Brewster, Delores A. Ashby, Ray Borrego, Sherry McLarrin, Helen R. Pace, Jason Mills, Paul Notaro, Patrick E. Grijak, Kandice Lightner, Lorraine Harris, Sabita M. Davies, William C. Lewis, Melissa McNeil, Denny W. Gaines, Wendy Marks-Cotton, Rodrick S. Crestwell, Carol Chadwick, Michael A. Matera, Liliana LeBlanc, David L. Falls, Jr., David Kesselman, Cynthia Konrath, James Barnes, Chrisy L. Parsons, Noralee Campisi, Eenyie J. Banbel, Andrew Jennings, Quiana Cole, LaVera Johnson, Gail Burnside, Frances S. Pratt, Evelyn C. Quiambao, Myron A. Johnson, Vincent A. Howard, Laura Nuccio, Cecil Hubbard, Sampson O. Boateng, Victorine Leao, Lauren Potchak, Sereba L. Henry, Anali Geron, Sandra Hope, Tomas R. Raid, David L. Landry, Amber Milligan, Christopher Holzshu, Mark J. Czarney, Barbara G. [*7] Kirkham, Mozelle Peterson, Peter F. Ackerbauer, Sr., Steven M. Donders, Michael P. Maggiacimo, Lisa Melanson, Kevin McKean, Lewis Call, Pamela J. Davis, Brian Domenicucci, Melissa Flint, Nancy M. Janerico, Susan C. Damon, Tammy R. Bragg, Cheryl K. Foster, Kecia A. Loggins, Brandon P. Phifer, Richard L. Grimes, Peter J. Micalizzi, Trisha Dandrado-Stanley, Bryan K. Gibson, Daniel L. Knepper, Elaine M. Motyka, Judy R. Mylott, Olukunle Akingbade, James E. Columbia, II, Rachel Boswell, Zachary J. Neuman, Jacob Iglesias, Brian J. Mhana, Jerry Garrisnky, Maynard V. Renner, Stephen K. Neubert, Timothy Dule, Jodie L. Barager, Robin D. Mazzantini, Annie Butler, Madeline U. Mallon, Tina M. Hodge, Renee Pepe, Debbie L. Haubert, Jack D. Blaker, Cheryl H. Pope, Rickeeta M. Adams, Keith T. Asamoto, Cassandra R. Adams, Randell L. LaRock, Robert Landino, Elizabeth Pitkiewicz, Patricia R. Richards, Richard Bacchus, Marva Crump, Joel L. Martin, Traci L. Baker, David J. Lawless, Louise M. Bulla, Donna Nuro, Tom Gibson, Brian M. Chewning, George H. Barney, III, Misty D. Phillips, W. Michael Randle, Roger J. Berthelette, Matthew J. Houde, Garry King, Jr., Cheryl Baltz, Richard H. Jones, Cheryl A. Goerndt, [*8] Robert Hinoiosa, Tara Morgan, Reesa R. Parker, Ceola M. Player, Carrie E. Hall, Rahim Lalani, Gloria R. Murray, Joseph Reid, Virgial J. Hunter, Tommy E. Antakikam, Stacey L. Harris, Kenneth H. Mahlstedt, Amy R. McClintock, Clay McCain, Scott T. Hooper, Dolly M. Pelley, Judith M. Mussick, Charles Kennedy, Maureen Dassinger, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Jeffrey A. Klafter, LEAD ATTORNEY, Klafter Olsen & Lesser LLP, Rye Brook, NY.

For Tichina D. Steele, Susan M. Whitehurst, David C. Weiss, Marcella SanGiorgio, Nick Traficante, Marlene V. Sekelik, Brian Rossetti, Latif A. Sheikh, Jarrod Taylor, Frank J. Tassone, Darrell K. Todoroff, Jr., Alice J. Snyder, Eric Winkler, Bennet L. Sandefur, Sr., Rosalind A. Williams, Jeffrey A. Sturgill, Michelle Scott-McQuien, Ralph S. Wiest, Jr., Brian Winston, Ryan Sharlow, David C. Smith, Dana Spaven, Kristen L. Smith, Richy Stéele, Alec Yantovsky, Richard D. Smith, Denise S. Yonkers, Brian M. Worley, Ronniese S. Thomas, Greg Williams, Janis M. Williams, Christopher D. Spiller, Bessie Shockey, Donna Sutton Wester, Rebecca Scicluna, Lisa K. Temples, Donna M. Traylor, Gigi Robinson, Pamela W. [*9] Shell, Martin M. Shultz, arthur R. Watkins, Jennifer Stenerson, Mary E. Roberts, Karl B. Tiitto, Kimberly K. Vance, Joe Silva, Timothy E. Truty, Janee R. Sterns, Sherita M. Williams, Nicholas Taupense, Desmond S. Robinson, Samantha Sethman, Mary Trammell, John Russo, Enrique Vazquez, Jean Ward, Samiel W. Shore, Deborah Saccoccio, Williard L. White, Jr., Diana L. Roberts, Cristine Slezinski, Dusty St. Amand, Cynthia R. Walton, Abraham Williams, Rebecca Scott, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA; Jeffrey A. Klafter, LEAD ATTORNEY, Klafter Olsen & Lesser LLP, Rye Brook, NY; Nicholas A. Migliaccio, LEAD ATTORNEY, Mason LLP, Washington, DC.

For JoAnn Piterniak, Plaintiff: Alexandra C. Warren, LEAD ATTORNEY, Cuneo Gilbert & LaDuca, LLP, Alexandria, VA.

For Rite Aid Corporation, Defendant: Beth A. Moeller, Justin M. Scott, LEAD ATTORNEYS, PRO HAC VICE, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Atlanta, GA; Daniel E. Turner, LEAD ATTORNEY, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Altanta, GA; Tracey T. Barbaree, LEAD ATTORNEY, Og-

letree Deakins, Atlanta, GA; Brian P. Downey, Pepper Hamilton LLP, Harrisburg, PA.

For Eckerd Corporation, [*10] Defendant: Beth A. Moeller, Justin M. Scott, LEAD ATTORNEYS, PRO HAC VICE, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Atlanta, GA; Tracey T. Barbaree, LEAD ATTORNEY, Ogletree Deakins, Atlanta, GA; Brian P. Downey, Pepper Hamilton LLP, Harrisburg, PA; Daniel E. Turner, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Altanta, GA.

For Mare Garland, Defendant: Jeffrey A. Klafter, LEAD ATTORNEY, Klafter Olsen & Lesser LLP, Rye Brook, NY.

**JUDGES:** Martin C. Carlson, United States Magistrate Judge. Judge Jones.

**OPINION BY:** Martin C. Carlson

**OPINION**

## MEMORANDUM ORDER

In the above-captioned action, the Defendants have moved the Court to restrict the Plaintiffs' ability to discover a number of potentially relevant documents on the grounds that the documents are protected from disclosure by the "self-critical analysis privilege." Specifically, Defendants argue that the Court should apply this privilege to shield from disclosure certain documents related to Defendants' voluntary internal assessment of their compliance with the Fair Labor Standards Act ("FLSA"), labor laws, and existing bargaining agreements, an assessment the company undertook as part of a store-level restructuring program. Plaintiffs oppose Defendants' assertion [*11] of the privilege, and argue that the privilege is not recognized by courts within the Third Circuit, and that even where such a privilege is recognized, the privilege has been properly limited to documents that were prepared as part of mandatory governmental reports or other govern-

2010 U.S. Dist. LEXIS 137773, *

mental compulsion. Additionally, Defendants contend that even where the privilege has been recognized, courts have refused to apply the privilege to the types of documents at issue in this case.

We have carefully considered the parties'. respective positions, and the case law that has addressed the issue. Because we find that the documents that Defendants seek to protect from disclosure may be relevant to Plaintiffs' claims in this case, and because we do not find that they can be properly shielded from discovery by the invocation of a broadly-framed self-critical analysis privilege, we reject Defendants' reliance upon this privilege to withhold production of the responsive documents at issue.

## II. FACTUAL BACKGROUND

According to the Defendants, Rite Aid, a national pharmaceutical retailer, engaged in a voluntary self-critical analysis in 2008 and early 2009, aimed at assessing the company's compliance with the   [*12] FLSA, certain labor laws, and existing bargaining agreements, as part of the company's restructuring of its stores, and the implementation of changes in how its stores are operated. (Doc. 223, Ex. A, Decl. of Kristin Crandall at ¶¶ 4-5.) Defendants represent that Kristin Crandall, Rite Aid's Vice President of Field Human Resources, led the human resources aspect of the store structure project team under the direction of Rite Aid's in-house counsel. (Id. at ¶ 4.) The project included participation by numerous high-level corporate employees from Rite Aid's operations, compensation, and human resources departments. (Id. ¶ 5.)

According to Rite Aid, the company's analysis included information-gathering, assessments, drafts, and recommended changes to store operations, and all of this information and material was shared with Rite Aid's counsel for the purpose of obtaining legal advice, and in anticipation of future FLSA litigation. Rite Aid represents that "the store structure team was

conducting a candid internal evaluation of Rite Aid's current and future compliance with the FLSA, and considering whether changes to store structures were appropriate and would also be in compliance." (Doc.   [*13] 223, at 3.)

Defendants now assert that the "self-critical analysis privilege" permits them to withhold documents produced or compiled as part of this 2008-2009 internal assessment. Plaintiffs argue that the privilege either is not recognized within the Third Circuit, or should not be found to apply to the kinds of documents at issue, which were generated as part of a voluntary initiative that Defendants undertook.

## III. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).   [*14] In this case, Plaintiffs are seeking to discover documents and materials that Rite Aid generated as part of its internal analysis regarding the company's com-

2010 U.S. Dist. LEXIS 137773, *

pliance with the FLSA, labor laws, and bar-gaining agreements, all of which were apparently conducted as part of the company's voluntary restructuring initiatives. There does not appear to be any real dispute that the materials that were created and compiled as part of Rite Aid's self-assessment may be relevant to Plaintiffs' claims in this case, or that it may be reasonably calculated to lead to the discovery of admissible evidence.

Instead, in their motion Defendants argue only that they should not be forced to respond to discovery requests that seek production of documents created or compiled as part of the internal self-assessment, because these materials are protected by a self-critical analysis privilege. In general, the self-critical, or self-evaluation, privilege has been found in some cases to protect evaluative materials created in accordance with governmental requirements, or for purposes of "self-improvement." Davis v. Kraft Foods North America, No. 03-6060, 2006 U.S. Dist. LEXIS 87140, 2006 WL 3486461, at *1 (E.D. Pa. Dec. 1, 2006) [*15] (citing Note, The Privilege of Self-Critical Analysis, 96 Harv. L. Rev. 1083, 1083 (1983). As one commentator has explained:

> The self-critical analysis qualified privilege allows individuals or businesses to candidly evaluate their compliance with regulatory and legal requirements without creating evidence that may be used against them in future litigation. The rationale for this qualified privilege is that critical self-evaluation fosters the compelling public interest that individuals and businesses comply with the law.

6 Moore's Federal Practice § 26.48[2] (3d ed.).

This privilege has been recognized and employed by some courts to protect from disclosure certain information in cases where a compelling public interest is found to outweigh the needs of private litigants and the judicial system for access to information relevant to the litigation. See Zoom Imaging, L.P. v. St. Luke's Hosp. & Health Network, 513 F. Supp. 2d 411, 413 (E.D. Pa. 2007) (citing 6 Moore's Federal Practice ¶ 26.48[2] and Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431 (E.D. Pa. 1978)). The privilege was not recognized at common law, Zoom Imaging, L.P., 513 F. Supp. 2d at 413, and appears not to have been recognized [*16] by the Third Circuit. See Alaska Elec. Pension Fund v. Pharmacia Corp., 554 F.3d 342, 351 n.12 (3d Cir. 2009) (observing in a footnote that the privilege "has never been recognized by this Court and we see no reason to recognize it now."); see also Davis, No. 03-6060, 2006 U.S. Dist. LEXIS 87140, 2006 WL 3486461, at *4 ("The Third Circuit has not recognized the self-critical analysis privilege, and is unlikely to do so."). ¹ In addition to the fact that the privilege not recognized at common law, and has not been embraced by the Third Circuit, Congress has not created a self-critical analysis privilege. Zoom Imaging, L.P., 513 F. Supp. 2d at 413. In light of this dearth of support for the privilege, the question presented in this case is whether the privilege ought to be recognized under federal common law and, if so, whether it should be applied to the type of reports that Defendants seek to shield in this case.

1    Other circuit courts have similarly declined to recognize or apply the privilege. See, e.g., Burden-Meeks v. Welch, 319 F.3d 897 (7th Cir. 2003); Union Pac. R.R. v. Mower, 219 F.3d 1069 (9th Cir. 2000); In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000); Reynolds Metals Co. v. Rumsfeld, 564 F.2d 663, 667 (4th Cir. 1977). [*17] But see LaClair v. City of St. Paul, 187 F.3d 824, 828-29 (8th Cir. 1999) (affirming

district court's exclusion of documents based on the privilege, but not explicitly adopting the privilege); Bredice v. Doctors Hosp., Inc., 479 F.2d 920, 156 U.S. App. D.C. 199 (D.C. Cir. 1970) (affirming district court's application of the privilege).

Rule 501 of the Federal Rules of Evidence "authorizes federal courts to define new privileges by interpreting 'common law principles . . . in light of reason and experience.'" Jaffee v. Redmond, 518 U.S. 1, 8, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996). By enacting Rule 501, Congress indicated its intent "not to freeze the law of privileges. Its purpose rather was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis . . . .'" Trammel v. United States, 445 U.S. 40, 47, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980) (quoting 120 Cong. Rec. 40, 891 (1974) (statement of Rep. William Hungate)).

Yet, while Rule 501 permits courts the latitude to recognize new privileges when facts and circumstances may warrant, the Third Circuit has admonished that "[t]he legislature, not the judiciary, is institutionally better equipped to perform the balancing of competing policy issues required in deciding whether the recognition [*18] of a . . . privilege is in the best interests of society." In re Grand Jury, 103 F.3d 1140, 1154, 35 V.I. 516 (3d Cir. 1997). Moreover, Rule 26 of the Federal Rules of Civil Procedure manifests a clear intention to limit Rule 501's flexibility "by favoring full disclosure of facts during discovery." Zoom Imaging, L.P., 513 F. Supp. 2d at 413 (citing Wei v. Bodner, 127 F.R.D. 91, 95-96 (D.N.J. 1989). As a result of this liberal policy favoring open discovery, the creation of new privileges is disfavored. Herbert v. Lando, 441 U.S. 153, 175, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979); In re Grand Jury, 103 F.3d 1140, 1149, 35 V.I. 516 (3d Cir. 1997); see also United States v. Nixon, 418 U.S. 683, 710, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974) (observing that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth."); In re Grand Jury, 103 F.3d at 1154 (courts should be "circumspect about creating new privileges based on perceived public policy considerations.").

Consistent with the Supreme Court's hesitance to recognize new and expansive privileges that frustrate discovery, the Supreme Court itself has been reluctant to expand upon common-law privileges. See University of Pennsylvania v. EEOC, 493 U.S. 182, 189, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990) (declining [*19] to create a common-law privilege to protect peer review materials from discovery in a Title VII case). This hesitance grows out of a recognition that privileges contravene the principle that "the public . . . has a right to every man's evidence." United States v. Bryan, 339 U.S. 323, 331, 70 S. Ct. 724, 94 L. Ed. 884 (1950). When privileges are created or recognized, they must be narrowly construed and allowed "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Trammel, 445 U.S. at 50 (quoting Elkins v. United States, 364 U.S. 206, 234, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960) (Frankfurter, J., dissenting).

In keeping with the foregoing principles that caution against the recognition of new and broadly framed privileges in civil litigation, courts within the Third Circuit have recently, with few exceptions, declined to recognize or apply a self-critical analysis privilege. See, e.g., Smith v. Life Investors Ins. Co. of America, No. 2:07-681, 2009 U.S. Dist. LEXIS 96310, 2009 WL 3364933, at *8 (W.D. Pa. Oct. 16, 2009)("the 'self critical analysis privilege' is not recognized by [*20] Pennsylvania or the Third Circuit and does not apply." citing Alaska Elec. Pension Fund v. Pharmacia, supra); Zoom Imaging, L.P., 513 F. Supp. 2d at 417 (declining to adopt a self-critical analysis privilege to prevent

2010 U.S. Dist. LEXIS 137773, *

the discovery of confidential documents produced by an outside consultant for an organizational study of a competing provider's radiological practice); Davis v. Kraft Foods North America, No. 03-6060, 2006 U.S. Dist. LEXIS 87140, 2006 WL 3486461, at *2 (E.D. Pa. Dec. 1, 2006) (refusing to recognize a self-critical analysis privilege where the defendant sought to withhold certain corporate documents, including a document that contained analysis and recommendations regarding the defendant's compensation efforts for minority and non-minority employees).

Furthermore, in a number of cases, courts have found that if the self-critical analysis privilege has any application in civil litigation between private parties, it only applies narrowly and extends to mandatory reports and other materials that are prepared at the direction of the government. See, e.g., Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431, 434 (E.D. Pa. 1978); [2] see also Paladino v. Woodloch Pines, Inc., 188 F.R.D. 224, 226 (M.D. Pa. 1999) [*21] ("[T]he 'self-critical analysis privilege will not extend to reports, analyses, surveys and the like *which are not mandated by the government*.") (original emphasis); Frazier v. Se. Pa. Transp. Auth., No. 84-3004, 1988 U.S. Dist. LEXIS 12311, 1988 WL 117869 (E.D. Pa. Nov. 1, 1988) (refraining from extending the self-critical analysis to reports, analyses, and surveys that were not mandated by the government, and which contained only objective information).

2   The court in Webb observed that even where the requested material constitutes subjective, evaluative materials prepared in the course of fulfilling governmental requests, such "material may not always be precluded from discovery." 81 F.R.D. at 434. Furthermore, the court noted that "several factors" provide guideposts in assessing the application of the privilege: (1) the materials generally are those prepared "for mandatory governmental reports"; (2) only subjective, evaluative

materials are subject to protection; and (3) courts are mindful of plaintiffs' need for such materials, and have denied discovery "only where the policy favoring exclusion of the materials *clearly outweighs the plaintiff's need*." Id. (emphasis added).

Although [*22] we recognize that Defendants have pointed to some case law from within this circuit where courts have either recognized the existence of the privilege, or applied it to the case under consideration, we are doubtful of the privilege's validity in the Third Circuit, in light of the appellate court's recent admonition that: "The self-critical analysis privilege has never been recognized by this Court and we see no reason to recognize it now. Cf. Union Pac. R.R. Co. v. Mower, 219 F.3d 1069, 1076 n. 7 (9th Cir.2000) (calling the privilege 'novel,' and noting that the Ninth Circuit has not recognized the privilege)." Alaska Elec. Pension Fund v. Pharmacia Corp. 554 F.3d 342, 351 n. 12 (3d Cir. 2009). Furthermore, even if the privilege has, at times, been recognized within this circuit, it appears that it has not been widely applied in cases such as the one at bar, where a defendant has voluntarily undertaken an internal review of its own practices and policies, in contrast to a situation where an entity prepared an internal report that was compelled by law or government regulation. In consideration of these factors, mindful of the fact that the subject matter of the report appears to have [*23] relevance to Plaintiffs' claims, and recognizing that we are to exercise caution and restraint in applying privileges since "[t]he legislature, not the judiciary, is institutionally better equipped to perform the balancing of competing policy issues required in deciding whether the recognition of a . . . privilege is in the best interests of society," In re Grand Jury, 103 F.3d 1140, 1154, 35 V.I. 516 (3d Cir. 1997), we conclude that Defendants may not rely upon a broad assertion of the self-critical analysis privilege to withhold documents related to Defendants' internal assessment of their compliance with the FLSA, labor laws, and existing bargaining agreements,

2010 U.S. Dist. LEXIS 137773, *

generated as part of Defendants' store restructuring program. [3]

> [3]  This ruling, of course, does not strip the Defendants of the ability to legitimately protect materials that are embraced by other, universally recognized legal privileges. Defendants also assert that in addition to the self-critical analysis privilege, each of the documents it has withheld from production is also protected by the attorney-client privilege, or otherwise constitutes attorney work product. The parties have not addressed the application of either the attorney-client [*24] privilege or the work-product doctrine to the documents at issue, and we, therefore, express no opinion as whether either may apply. We understand that Defendants have furnished Plaintiffs with an updated privilege log, and that the parties are attempting to reach an agreement with respect to privilege issues that will obviate the need for further Court order. (Doc. 223, at 1-2 n.1.) To the extent the parties remain unable to resolve any further disagreements regarding the application of privileges to the documents in question, the Court stands ready to assist them.

## IV. ORDER

Accordingly, for the reasons set forth above, the Court finds that Defendants' are not entitled to rely upon the self-critical analysis privilege to withhold documents related to Defendants' internal assessment of their compliance with the FLSA, labor laws, and existing bargaining agreements, an assessment the company undertook as part of a store-level restructuring program in 2008 and 2009. As a result of this finding, IT IS HEREBY ORDERED THAT Defendant's Motion and Brief in Support of Defendants' Reliance on the Self-Critical Analysis Privilege (Doc. 223) IS DENIED.

*/s/ Martin C. Carlson*

Martin C. Carlson

United   [*25] States Magistrate Judge

Dated: December 29, 2010

# COFFEY · KAYE · MYERS · & · OLLEY
### ATTORNEYS AT LAW
### SUITE 718
### TWO BALA PLAZA

MITCHELL A. KAYE
LAWRENCE A. KATZ
ROBERT E. MYERS
MICHAEL J. OLLEY

JOSEPH A. COFFEY, JR.
OF COUNSEL

BALA CYNWYD, PA. 19004-1514

PHILADELPHIA AREA
610-668-9800

CABLE ADDRESS:
FELA
FAX
610-667-3352
NATIONWIDE
800-334-2500

January 20, 2011

Paul F. X. Gallagher, Esquire
Gallagher & Rowan
1800 JFK Boulevard, Suite 1000
Philadelphia, PA  19103

*Via Fax: (215) 732-8999*
*And U.S. First Class Mail*

Re: **Kevin Slaughter vs. Amtrak**
**USDC for the Eastern District of Pennsylvania, C.A. No.: 10-4203**
**Date of Accident: March 24, 2009**

Dear Mr. Gallagher:

I am writing as a follow up to your offices call to my office regarding setting up the depositions in this matter.  I would like to direct your attention to my January 6, 2011 wherein I requested an un-redacted copy of the accident investigation report in Mr. Slaughter's case.

In addition, I advised you that it is my understanding that Ms. Maine of your client's claim department had spoken with Mr. Slaughter on the phone and took some type of statement from him.  I asked you to inform me first of all whether this conversation was recorded or whether Ms. Maine took a written statement from Mr. Slaughter.  In any case, I would like a copy of any and all statements that Mr. Slaughter gave to any employee of your client from the date of the accident up to the present.  To date, I have not received any response from you concerning the above.

Until I receive the above requested documents and have had a chance to review same with my client, I will not be in a position to schedule the depositions in this matter.

Thank you for your attention to this matter.

Very truly yours,

COFFEY, KAYE, MYERS & OLLEY

ROBERT E. MYERS

REM:am


**EXHIBIT**
C

# GALLAGHER & ROWAN P.C.
### ATTORNEYS AT LAW

Paul F. X. Gallagher +
Maureen Rowan *
Benjamin N. Gialloreto *

Jessica E. Gensler Lippy ±
Raymond J. Hunter +
Patrick J. Finn +
Clinton E. Creasy *

*Member of PA Bar
+Member of PA & NJ Bar
±Member of PA, NJ, & DE Bar

Philadelphia Offices
1800 JFK Blvd, Suite 1000
Philadelphia, PA 19103
215-732-8900
215-732-8999 fax

New Jersey Offices
309 Fellowship Rd., Suite 200
Mt. Laurel, NJ 08054
856-608-9020
856-608-0625 fax

Delaware Offices
1000 N. West Street, Suite 1200
Wilmington, DE 19801
302-295-4866
302-295-4867 fax

OUR FILE NO: 111.175

February 1, 2011

EXTENSION: 113

*Via facsimile and regular mail*
Robert Myers, Esquire
Coffey Kaye Myers & Olley
718 Two Bala Plaza
Bala Cynwyd, PA 19004

RE:   Kevin Slaughter v. National Railroad Passenger Corporation
       USDC for the Eastern District of PA, No.: 10-4203

Dear Mr. Myers:

I am in receipt of your letter dated January 6, 2011.  Please be advised that we will not produce an unredacted copy of the Accident Investigation Report.

First, the Craig opinion to which you refer is from the Middle District and is, therefore, not binding on courts in the Eastern District.  Second, Craig is not an FELA case, and the Eastern District has held that the doctrine applies to certain information in accident investigation reports in FELA cases.  In Melhorn v. New Jersey Transit, 2001 WL516108 (E.D.Pa.), the Eastern District had the opportunity to hold, but did not hold, that the doctrine was wholly inapplicable in FELA cases.  On the contrary, the court analyzed, *under the elements of the doctrine*, whether the specific information which was redacted was covered by the doctrine, and determined that such information was not protected because it was objective, rather than subjective opinion/evaluation.  Moreover, the report in question in Melhorn was not identified as a "mandatory government report".  Melhorn does not limit the doctrine's applicability to such reports in FELA cases, as you suggest in your letter.  More recently, in 2007, in Zoom Imaging, L.P. v. St. Luke's Hosp. and Health Network, 513 F.Supp.2d 411 (E.D.Pa. 2007), the Eastern District, citing Melhorn and other cases, recognized that it has in fact recognized and applied the doctrine under



EXHIBIT
D

February 1, 2011
Page 2

circumstances which are applicable to the Slaughter case:  "[A] number of federal court decisions have recognized some form of the self-critical analysis privilege, *the decisions in this Court recognizing the privilege have done so primarily in cases involving accident investigations*, affirmative action plans, and internal police investigations."

In the instant case, the redacted language in question is subjective evaluation which provides recommended actions which should be taken by Amtrak in order to prevent similar accidents in the future. This language epitomizes the exact type of information which is most clearly protected by the doctrine.

Very truly yours,

RAYMOND J. HUNTER

RJH/mld