IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN SLAUGHTER | : | |
| | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **NATIONAL RAILROAD PASSENGER,** | : | No.: 10-4203 |
| **CORPORATION a/k/a AMTRAK** | : | |
| | : | |
| **Defendant.** | : | |

## M E M O R A N D U M

**SITARSKI, M.J.**                                                                                      **March 4, 2011**

Currently pending before the Court is Plaintiff's Motion to Compel and Brief in Support (Doc. No. 16),[1] Defendant's Response in Opposition to Plaintiff's Motion to Compel (Doc. No. 21), Defendant's Motion for Protective Order and Memorandum of Law in Support (Doc. No. 17), Plaintiff's Response in Opposition to Defendant's Motion for Protective Order and Memorandum of Law in Support (Doc. Nos. 18 and 19), and Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Protective Order (Doc. No. 22). These motions each concern the same issue: whether Defendant must produce an unredacted copy of their Accident Investigation Report, or whether portions of the Report may be withheld from production pursuant to the self-critical analysis privilege. Specifically, Plaintiff objects to Defendant's redaction of Section 31, "Conclusions and Recommended Remedial/Corrective

---

[1] The sole remaining issue from Plaintiff's Motion to Compel is Plaintiff's request for a copy of Defendant's Accident Investigation Report in which Sections 31, "Conclusions and Recommended Remedial/Corrective Actions," and Section 32, "Comments and/or Projected Date of Implementation," are not redacted. Plaintiff had also objected to Defendant's redaction of certain telephone numbers contained in the Report, and Defendant filed a motion for Protective Order as to this information as well. At Oral Argument on the pending motions, Plaintiff advised the Court that he withdrew his objection on this point. Therefore, to the extent Plaintiff moved to compel production of this information, the motion is denied as moot.

Actions," and Section 32, "Comments and/or Projected Date of Implementation." Defendant seeks a protective order as to these same two sections of the Report.

For the following reasons, the portion of Plaintiff's Motion to Compel seeking an unredacted copy of the Accident Investigation Report will be GRANTED in part, and denied as moot in all other respects. Defendant's Motion for Protective Order will be DENIED.

**I.  INTRODUCTION**

Plaintiff was employed by Defendant, and alleges he was injured while working at Defendant's Race Street Engine Terminal, 30th Street Station, Philadelphia, Pennsylvania. Plaintiff filed this action under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51, *et. seq*. Defendant investigated the incident and created an Accident Investigation Report ("Report"). Defendant produced a copy of the Report to Plaintiff, but redacted the information within the sections titled "Conclusions and Recommended Remedial/Corrective Actions" and "Comments and/or Projected Date of Implementation."

Plaintiff filed a Motion to Compel seeking, *inter alia*, an unredacted copy of the Report. Defendant filed a Motion for Protective Order seeking to protect the redacted information from discovery. Defendant argues that the redacted information is protected by the self-critical analysis privilege because it consists of "subjective evaluation which provide recommended actions which should be taken by [Amtrak] in order to prevent similar accidents in the future." Motion for Protective Order, ¶ 15, pg. 4. Defendant asserts that this information "epitomizes" the type of information the self-critical analysis privilege is designed to protect. *Id.* Plaintiff counters that the privilege has never been recognized by the Third Circuit Court of Appeals, and

should not be recognized and applied here. Pl. Resp. in Opp., ¶ 17; See generally, Pl. Memo. in Support of Resp. in Opp., pgs. 2 - 5.

## II. DISCUSSION

The scope of discovery is governed by Federal Rule of Civil Procedure 26. Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Thus, the primary considerations concerning whether a "matter" is discoverable are: 1) whether the matter sought is protected by a privilege; and 2) whether the matter sought is relevant to "any party's claim or defense." *Id.* During the February 23, 2011 oral argument, counsel for both parties agreed that the content of the Report is relevant. Additionally, counsel for Defendant withdrew its claim that the Report is protected by the work product doctrine. Therefore, the sole issue before the court is whether the redacted information is protected by the "self-critical analysis" privilege.

The self-critical analysis privilege is not statutory or provided by Rule, regulation, or otherwise. Thus, in order for it to apply, it must be recognized at common law. Federal Rule of Evidence 501 governs the law of privileges. It provides that "[t]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the court of the United States in the light of reason and experience." FED. R. EVID. 501. "When Congress enacted Rule 501, it manifested an affirmative intention not to freeze the law of privileges. Its purpose . . . was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis . . . .'" *Trammell v. U.S.*, 445 U.S. 40, 47 (1980) (quoting 120 Cong. Rec. 40,891 (1974) (statement of Rep. Hungate)). However, the authority to develop new privileges is not unfettered. "Evidentiary

3

privileges in litigation are not favored . . . ." *Herbert v. Lando*, 441 U.S. 153, 175 (1979). Accordingly, the United States Supreme Court urges restraint when developing or recognizing new privileges because they impede the discovery of relevant information. See e.g., *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990) ("[W]e are disinclined to exercise [the authority to craft new privileges under Rule 501] expansively."); *U.S. v. Nixon*, 418 U.S. 683, 710 (1974) ("exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."); *U.S. v. Bryan*, 339 U.S. 323, 331 (1950) ("'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence.' . . . and that any exemptions which may exist are distinctly exceptional . . . ." (quoting Wigmore, Evidence (3d ed.) s 2192)). Privileges "must be strictly construed and accepted 'only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammell*, 445 U.S. at 50 (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)). Thus, the general rule "disfavor[s] testimonial privileges." See *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996).

Consistent with this general rule and its policy of restraint, the Supreme Court "rarely expand[s] common-law testimonial privileges." *In re Grand Jury*, 103 F.3d 1140, 1149 n.19 (3d Cir. 1997) (collecting cases), see also e.g., *University of Pennsylvania*, 493 U.S. at 189 (declining to recognize peer review materials privilege); *U.S. v. Gillock*, 445 U.S. 360, 373 (1980) (declining to create a state legislator privilege), *Branzburg v. Hayes*, 408 U.S. 665, 706 (1972) (declining to recognize a privilege allowing newsmen to avoid testifying about confidential

sources and suggesting the creation of such a privilege is best left to the legislature). These cases emphasize the need for caution when determining whether to recognize a new privilege. Similarly, the Third Circuit Court of Appeals stated that it has "likewise declined to exercise [its] power under Rule 501 expansively." *In re Grand Jury*, 103 F.3d at 1149. (declining to create parent-child privilege). The Court of Appeals added further that "we should be circumspect about creating new privileges based upon perceived public policy considerations." *Id.* at 1155.

Rule 501 provides further that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." FED. R. EVID. 501. However, "under [Rule 501], in federal question cases the federal common law of privileges applies." See *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 103 (3d Cir. 1982). Here, Plaintiff filed his claim under FELA. FELA provides federal and state courts with concurrent jurisdiction. 46 U.S.C. § 56. Negligence under FELA "is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes." *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 504 n.13 (1957) (quoting *Urie v. Thompson*, 337 U.S. 163, 174 (1949)), see also *Fox v. Consolidated Rail Corp.*, 739 F.2d 929, 931 (3d Cir. 1984) (stating with respect to FELA's grant of concurrent jurisdiction that "it is firmly established that the substantive aspects of such litigation are governed by federal law.") Thus, the availability of the self-critical analysis privilege will be determined according to federal common law. I thus turn to the question of whether federal common law recognizes the self-critical analysis.

The origin of the self-critical analysis privilege is attributed to *Bredice v. Doctors Hosp.*

*Inc.*, 50 F.R.D. 249 (D.D.C 1970). See e.g., *Zoom Imaging, L.P. v. St. Lukes Hosp. and Health Network*, 513 F. Supp. 2d 411, 414 (E.D. Pa. 2007) (Sanchez, J.). Since *Bredice*, however, the privilege has not been uniformly accepted, nor uniformly applied. See e.g., *Spencer Savings Bank v. Excell Mortgage Group*, 960 F. Supp. 835, 840-841 (D. N.J. 1997) (discussing uneven application among the federal circuits); *Myers v. Uniroyal Chemical Co., Inc.*, 1992 WL 97822 at *1-2 (E.D. Pa. May 5, 1992) (Waldman, J.) (noting some courts have applied the privilege while others have declined). Furthermore, neither the United States Supreme Court nor the circuit courts have "definitively denied the existence of [the self-critical analysis privilege], nor accepted it and defined its scope." *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 426 n.1 (9th Cir. 1992). In fact, "[a] majority of the Circuits have refused to recognize or apply [it]." *Davis v. Kraft Foods North America*, 2006 WL 3486461 at *2 (E.D. Pa. Dec. 1, 2006) (Diamond, J.) (collecting cases). This includes the Third Circuit, as the Court of Appeals recently stated that "[t]he self-critical analysis privilege has never been recognized by this Court and we see no reason to recognize it now." *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351 n.12 (3d Cir. 2009).

In the wake of the Third Circuit's statement in *Alaska Elec. Pension Fund*, courts within the Third Circuit have consistently declined to apply the self-critical analysis privilege. *Sabric v. Lockheed Martin*, 2011 U.S. Dist. Lexis 17630 at *3-4 (M.D. Pa. Feb. 23, 2011) (noting the Third Circuit "expressly declined to recognize the privilege," and declining to apply it to protect an internal report summarizing an investigation into the shooting death of the plaintiff's decedent (citing *Alaska Elec. Pension Fund*, 554 F.3d at 351 n.12)); *Craig v. Rite Aid Corp.*, 2010 WL 5463292 at *5 (M.D. Pa. Dec. 29, 2010) (noting "we are doubtful of the privilege's validity in

6

the Third Circuit . . . ." and refusing to apply to a report assessing company's compliance with certain labor laws and bargaining agreements as part of its restructuring (citing *Alaska Elec. Pension Fund*, 554 F.3d at 351 n.12)); *Smith v. Life Investors Ins. Co. of America*, 2009 WL 3364933 at *8 (W.D. Pa. Oct. 16, 2009) ("the 'self-critical analysis privilege' is not recognized by Pennsylvania or the Third Circuit and does not apply." (citing *Alaska Elec. Pension Fund*, 554 F.3d at 351 n.12)). This reflects a recent trend by courts in the Eastern District that began before the Third Circuit's statement in *Alaska Elec. Pension Fund*. These courts declined to recognize or apply the privilege, and have questioned its validity in the Third Circuit. *Zoom Imaging*, 513 F. Supp. 2d at 417 ("Because 'reason' and 'experience' weigh against the creation of a self-critical analysis privilege, I decline applying such a privilege in this case."); *Davis*, 2006 WL 3486461 at *11 (declining to apply the privilege and predicting the Third Circuit is unlikely to recognize it).

Against this backdrop, I cannot recognize and employ the self-critical analysis privilege in this case. The privilege is not uniformly recognized at common law. Indeed, in *Alaska Elec. Pension Fund,* the Third Circuit specifically stated that such a privilege had <u>not</u> been recognized, and declined to recognize it in that case. Recent decisions from district courts within this Circuit have invoked the Third Circuit's statements in *Alaska Elec. Pension Fund*, and have declined to recognize such a common law privilege.

To be sure, and as Defendant points out, courts within the Eastern District of Pennsylvania have, in some instances, applied the privilege in various contexts. See e.g., *McCallister ex rel. McCallister v. Royal Caribbean Cruises, Ltd.*, 2004 WL 2216487 at *1 (E.D. Pa. Oct. 4, 2004) (Hart, M.J.) (applied to protect reports prepared by outside consultants

7

evaluating the defendant's efforts to prevent sexual harassment and assault); *In re Petition of McCallister Towing & Transp. Co.*, 2004 WL 1240667 (E.D. Pa. May 7, 2004) (applied to protect subjective portions of accident investigation report); *Melhorn v. N.J. Transit Rail Operations, Inc.*, 2001 WL 516108 at *1 (E.D. Pa. May 15, 2001) (Green, J.) (applied but did not protect a railroad worker injury report because it contained objective information and the public policy favoring exclusion did not outweigh plaintiff's need for the report); *Clark v. Pa. Power and Light Co.*, 1999 WL 225888 at *2 (E.D. Pa. April 14, 1999) (Dubois, J.) (applied to protect affirmative action plans and reports regarding equal employment opportunity policies); *Frazier v. S.E. Pa. Transp. Auth.*, 1998 WL 117869 at *3 (E.D. Pa. Nov. 1, 1988) (Naythons, M.J.) (applied but did not protect SEPTA's Office of Civil Rights monthly management and annual staffing reports because they were "strictly objective"); *Granger v. Nat'l R.R. Passenger Corp.*, 116 F.R.D. 507, 510 (E.D. Pa. 1987) (Broderick, J.) (applied to protect subjective portions of accident report but not objective portions); *Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 434-435 (E.D. Pa. 1978) (Huyett, J.) (applied but did not prevent defendant from answering interrogatories seeking objective information and which were not related to mandatory government reports in compliance with employment laws). However, these cases predate *Alaska Elec. Pension Fund* and the Third Circuit's statement therein, that it has never recognized a self-critical analysis privilege. Thus, their persuasiveness has been undercut.

Moreover, I am hesitant to recognize a new privilege based on perceived public policy concerns. See *In re Grand Jury*, 103 F.3d at 1154; *Zoom Imaging*, 513 F. Supp. 2d at 413 n.3. Defendant argues that protecting the redacted material is necessary to promote candor in accident investigation reports, which in turn promotes employee and railroad safety. Certainly, these are

laudable goals, but I am not persuaded by Defendant's argument that these policy goals warrant the application of the privilege in this case,[2] especially in light of the liberal scope of discovery afforded litigants under Rule 26, and the view that evidentiary privileges are disfavored as inconsistent with that broad scope of discovery. See *Herbert*, 441 U.S. at 175.

Accordingly, I decline to protect the redacted information from discovery based upon the self-critical analysis privilege. Pursuant to Rule 26(b), because the Report is relevant and no privilege applies, Defendant must produce a copy of the Report, without redacting Sections 31 and 32. An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

---

[2] This is particularly true, given that Defendant conceded at oral argument that it would permit deposition questioning on this issue. Defendant thus argues that the self-critical analysis should apply only to documents, and not to oral testimony, so that Plaintiff would obtain the same information if the "right questions" are asked at depositions. I fail to see a public policy that will be furthered by drawing this distinction, and am hesitant to embrace a rule that arguably engrafts some degree of gamesmanship onto the discovery process.